CIVIL ACTION NO. 3:26-cv-43-FDW

FILED
CHARLOTTE, NC

JAN 16 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT WESTERN DISTRICT OF NORTH CAROLINA CHARLOTTE DIVISION

DOMINIQUE JACKSON,

Plaintiff,

v.

TRUEBLUE, INC. and

PEOPLEREADY, INC.,

Defendants.

COMPLAINT AND JURY DEMAND

## INTRODUCTION

1. This is a civil action for employment discrimination, failure to accommodate, and related state law torts arising from Defendants' explicit refusal to provide reasonable accommodations for Plaintiff's disability, followed by a discriminatory suspension that directly caused three suicide attempts and ongoing severe psychological trauma.
2. On July 18, 2025, Plaintiff Dominique Jackson disclosed his mental illness to a PeopleReady manager and requested reasonable accommodation for medication side effects. The manager's response was unequivocal: "No, we don't make accommodations for things like that," "we treat everyone the same," and "we can't and won't give accommodations or exceptions."
3. Within 24 hours of this explicit refusal to accommodate, Plaintiff attempted suicide. He attempted suicide again four days later. Within two weeks, he required emergency psychiatric intervention and placement under ACT (Assertive Community Treatment) team care—the highest level of community-based mental health services.
4. The causal connection between Defendants' discrimination and Plaintiff's injuries is direct, immediate, and undeniable.
5. Plaintiff brings this action to vindicate his rights under federal and state law and to obtain compensation for the devastating harm Defendants' unlawful conduct caused.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights).
7. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. 8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.
9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business in this district and the unlawful employment practices occurred in this district.
10. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about December 8, 2025 (Charge No. 430-2025-03916).
11. The EEOC issued a Notice of Right to Sue on or about December 19, 2025.
12. Plaintiff received the Right to Sue letter on December 19, 2025, and this Complaint is filed within 90 days of receipt, satisfying all administrative prerequisites.

## PARTIES

13. Plaintiff Dominique Jackson is an individual residing in Charlotte, Mecklenburg County, North Carolina.
14. At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability as defined by the Americans with Disabilities Act.
15. Defendant TrueBlue, Inc. ("TrueBlue") is a Washington corporation with its principal place of business in Tacoma, Washington.
16. TrueBlue is an employment services company operating staffing agencies nationwide, including PeopleReady.
17. Defendant PeopleReady, Inc. ("PeopleReady") is a wholly-owned subsidiary of TrueBlue and operates temporary staffing services throughout the United States, including in Charlotte, North Carolina.
18. At all times relevant to this Complaint, Defendants employed more than 15 employees and were Plaintiff's employers within the meaning of Title VII and the ADA.
19. Defendants are and were engaged in an industry affecting commerce within the meaning of Title VII and the ADA.
20. All conditions precedent to filing this action have been satisfied.

## FACTUAL BACKGROUND

A. Plaintiff's Employment with PeopleReady

21. Plaintiff began working for PeopleReady in or around 2024 as a temporary worker accepting day labor and short-term assignments.
22. Plaintiff performed his work satisfactorily and had no prior disciplinary issues with PeopleReady.
23. Plaintiff is an African American male with diagnosed mental illnesses including schizophrenia, bipolar disorder with psychotic features, PTSD, and general anxiety disorder.
24. Plaintiff's mental illnesses constitute disabilities within the meaning of the ADA because they substantially limit one or more major life activities, including but not limited to: thinking, concentrating, interacting with others, caring for oneself, and working.
25. Plaintiff takes daily psychotropic medication to manage his disabilities. These medications include antipsychotics and mood stabilizers that occasionally cause side effects including sedation, drowsiness, and fatigue.
26. These medication side effects are medically documented, beyond Plaintiff's control, and occur infrequently.

27. Despite these occasional side effects, Plaintiff is a qualified individual with a disability who can perform the essential functions of temporary work assignments with or without reasonable accommodation.

B. The July 18, 2025 Incident

28. On the morning of July 18, 2025, Plaintiff woke up late due to medication-related sedation and drowsiness.
29. At approximately 8:45 a.m., Plaintiff immediately called the PeopleReady Scaleybark office to inform them he was running late and to ask if he could still report to his assigned work location.
30. A female employee answered the phone and told Plaintiff she would call him back.
31. Shortly thereafter, the employee called Plaintiff back and informed him that he was suspended for 30 days.
32. Plaintiff asked to speak with the manager.
33. Plaintiff spoke with the Scaleybark branch manager (name unknown to Plaintiff but known to Defendants).
34. During this conversation, Plaintiff explained his situation honestly and in good faith. He disclosed his mental illness and explained that he takes daily medication that occasionally causes sedation and drowsiness—symptoms that are medically documented and beyond his control.
35. Plaintiff specifically asked whether there were any exceptions or accommodations available given his disability.
36. The manager's response was explicit, categorical, and discriminatory. 37. The manager stated: "No, we don't make accommodations for things like that." 38. The manager stated: "If you know you have to take medicine, then you should not accept jobs on the days you take it."
39. Plaintiff asked directly: "So you don't offer someone with disabilities exceptions or accommodations?"
40. The manager responded: "No, we treat everyone the same here. You went to orientation. A no call no show or cancellation has consequences and we can't and won't give accommodations or exceptions to this rule."
41. Plaintiff requested an in-person meeting to discuss possible accommodations.
42. The manager refused: "As far as us meeting to discuss exceptions and accommodations, no. We don't make exceptions."
43. The manager did not ask for medical documentation.
44. The manager did not offer to consult with Human Resources or corporate counsel.
45. The manager did not engage in any interactive process to determine what reasonable accommodations, if any, might be available.
46. The manager explicitly and categorically refused to provide any accommodation

or even to discuss the possibility of accommodation.
47. The manager's statements were clear, unambiguous, and constitute direct evidence of intentional disability discrimination and failure to accommodate.

C. Immediate and Catastrophic Consequences

48. The manager's discriminatory refusal to accommodate Plaintiff's disability triggered an immediate and severe mental health crisis.
49. July 19, 2025 (24 hours after the manager's refusal): Plaintiff attempted suicide via medication overdose.
50. July 22, 2025 (4 days after suspension): Plaintiff attempted suicide a second time.
51. July 30, 2025: Plaintiff underwent emergency psychiatric evaluation and was placed under ACT (Assertive Community Treatment) team care.
52. ACT team care is the highest level of community-based mental health intervention, reserved for individuals with severe mental illness who cannot function independently without intensive support.
53. August 2025: Plaintiff attempted suicide a third time.
54. The temporal proximity between the manager's discriminatory statements and Plaintiff's suicide attempts—24 hours—establishes direct causation. 55. There was no intervening event between the discrimination and Plaintiff's crisis. 56. The manager's explicit rejection of Plaintiff's humanity and dignity, combined with the financial stress of a 30-day unpaid suspension, created a psychological crisis that Plaintiff could not manage despite his ongoing mental health treatment.

D. Defendants' Post-Incident Response and Consciousness of Guilt
57. On or around August 15, 2025, Plaintiff filed a complaint with TrueBlue's Human Resources department.
58. TrueBlue's HR department contacted Plaintiff, apologized for his "negative experience," and informed him that the manager who discriminated against him was no longer with the company.
59. Plaintiff subsequently learned that:
    - The Scaleybark branch manager was terminated;
    - The entire Scaleybark office was closed; and
    - Operations were consolidated into the North Tryon branch.
60. These actions demonstrate that Defendants recognized the severity of the manager's misconduct and Defendants' potential liability.
61. However, these corrective actions do not undo the three suicide attempts, months of intensive mental health treatment, complete inability to work, or severe financial consequences Plaintiff has suffered.

E. Ongoing Harm and Damages

62. Since July 18, 2025, Plaintiff has been unable to work due to severe psychological trauma directly caused by Defendants' discrimination.
63. Plaintiff continues to receive ACT team services and intensive psychiatric treatment.
64. Plaintiff suffers from severe emotional distress, depression, anxiety, and symptoms consistent with PTSD.
65. Plaintiff has fallen substantially behind on rent and is facing eviction proceedings.
66. Plaintiff has accumulated approximately $3,670 in rent arrears as a direct result of his inability to work following Defendants' discrimination.
67. Plaintiff's quality of life has been fundamentally and perhaps permanently diminished.
68. Plaintiff experiences ongoing humiliation, loss of dignity, anhedonia (inability to experience pleasure), and loss of enjoyment of life.

## COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

### Failure to Accommodate (42 U.S.C. § 12112(b)(5)(A))

69. Plaintiff incorporates by reference all preceding paragraphs.
70. At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability within the meaning of the ADA.
71. Plaintiff's mental illnesses—schizophrenia, bipolar disorder with psychotic features, PTSD, and general anxiety disorder—substantially limit major life activities including thinking, concentrating, interacting with others, and working.
72. Plaintiff was capable of performing the essential functions of temporary work assignments with or without reasonable accommodation.
73. Plaintiff requested reasonable accommodation for his disability by disclosing his mental illness and medication side effects and asking whether exceptions or accommodations were available.
74. The requested accommodation—occasional flexibility for infrequent medication-related tardiness—was reasonable and would not have imposed an undue hardship on Defendants.
75. Defendants, through the Scaleybark manager acting within the scope of his employment, explicitly refused to provide any accommodation.
76. Defendants failed to engage in the interactive process required by the ADA to determine what reasonable accommodations, if any, could be provided. 77. The manager's categorical statement that PeopleReady does not "make accommodations for things like that" and "can't and won't give accommodations" constitutes a per se violation of the ADA's accommodation requirement. 78. Defendants' failure to accommodate Plaintiff's disability was intentional, willful, and in reckless disregard of Plaintiff's federally protected rights.

78A. The manager's categorical refusal to provide any accommodation or even discuss accommodations demonstrates malice or reckless indifference to Plaintiff's rights under the ADA.

78B. Upon information and belief, Defendants have previously settled ADA-related claims, demonstrating that Defendants were aware of their obligations under the ADA but failed to implement adequate training, policies, or procedures to prevent violations.

78C. Despite this prior knowledge, Defendants failed to train the Scaleybark manager on ADA compliance, failed to implement procedures for handling accommodation requests, and failed to supervise the manager's handling of disability-related employment decisions.

78D. This pattern of conduct demonstrates reckless indifference to federally protected rights warranting an award of punitive damages.

79. As a direct and proximate result of Defendants' failure to accommodate, Plaintiff suffered severe harm including three suicide attempts, ongoing psychological trauma, inability to work, and substantial economic losses.

WHEREFORE, Plaintiff requests judgment against Defendants on Count I and the relief set forth below.

## COUNT II: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

### Disability Discrimination (42 U.S.C. § 12112(a))

80. Plaintiff incorporates by reference all preceding paragraphs.
81. Defendants discriminated against Plaintiff on the basis of his disability by: o Suspending him for 30 days without pay due to disability-related tardiness; o Explicitly refusing to accommodate his disability;
    - Treating him less favorably than similarly situated non-disabled employees; and
    - Creating a hostile and discriminatory work environment through the manager's explicit statements that employees with disabilities should not work for PeopleReady if they require accommodations.
82. The manager's statements—"we don't make accommodations for things like that," "you should not accept jobs on the days you take [medication]," and "we treat everyone the same"—constitute direct evidence of intentional disability discrimination.
83. Treating "everyone the same" without regard to disability-related needs is not equal treatment—it is discrimination under the ADA.

84. Defendants' actions were motivated by animus toward Plaintiff's disability and reflect a discriminatory policy or practice of refusing accommodations.

84A. Defendants' conduct demonstrates malice or reckless indifference to Plaintiff's federally protected rights under the ADA, warranting an award of punitive damages.

84B. Upon information and belief, Defendants' prior settlements of ADA-related claims, combined with their failure to prevent this violation, demonstrates a pattern of reckless indifference to disability discrimination laws.

85. As a direct and proximate result of Defendants' disability discrimination, Plaintiff suffered severe harm including three suicide attempts, ongoing psychological trauma, inability to work, and substantial economic losses.

WHEREFORE, Plaintiff requests judgment against Defendants on Count II and the relief set forth below.

## COUNT III: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

### Race Discrimination (42 U.S.C. § 2000e-2(a))

86. Plaintiff incorporates by reference all preceding paragraphs.
87. Plaintiff is African American.
88. Plaintiff was qualified for and performing his job satisfactorily.
89. Upon information and belief, similarly situated non-African American employees who were tardy or requested schedule flexibility were not subjected to 30-day suspensions.
90. Upon information and belief, Defendants applied disciplinary policies more harshly to African American employees, including Plaintiff, than to similarly situated white employees.
91. The manager's refusal to engage with Plaintiff's accommodation request and the severity of the 30-day suspension, when viewed in the context of Plaintiff's race, give rise to an inference of discriminatory animus.
92. Plaintiff's race was a motivating factor in Defendants' decision to suspend him and refuse his accommodation request.
93. As a direct and proximate result of Defendants' race discrimination, Plaintiff suffered severe harm including three suicide attempts, ongoing psychological trauma, inability to work, and substantial economic losses.

WHEREFORE, Plaintiff requests judgment against Defendants on Count III and the relief set forth below.

## COUNT IV: NORTH CAROLINA STATE LAW CLAIM

**Negligent Infliction of Emotional Distress**

94. Plaintiff incorporates by reference all preceding paragraphs.
95. This Court has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367.
96. Defendants owed Plaintiff a duty of reasonable care in managing employment decisions affecting individuals with known mental illnesses.
97. When an employee discloses mental illness requiring daily medication and explicitly requests accommodation, it is entirely foreseeable that:
    - A harsh disciplinary response could trigger severe psychological distress;
    - An explicit refusal of accommodation could cause feelings of rejection, hopelessness, and unworthiness; and
    - The combination of sudden job loss, financial stress, and discriminatory treatment could precipitate a mental health crisis.
98. Defendants breached their duty of care by:
    - Refusing to engage in any interactive process regarding accommodation;
    - Suspending Plaintiff for 30 days without pay immediately after he disclosed his disability;
    - Failing to provide the manager with adequate training on handling disability accommodation requests; and
    - Failing to implement policies and procedures to ensure lawful responses to accommodation requests.
99. Defendants' breach of duty was the direct and proximate cause of Plaintiff's severe emotional distress.
100. Plaintiff's suicide attempts—occurring within 24 hours and then again within days of the manager's discriminatory refusal—were a foreseeable consequence of Defendants' negligent conduct.
101. Plaintiff has suffered and continues to suffer severe emotional distress as a result of Defendants' negligence.

WHEREFORE, Plaintiff requests judgment against Defendants on Count IV and the relief set forth below.

## COUNT V: NORTH CAROLINA STATE LAW CLAIM

**Intentional Infliction of Emotional Distress**

102. Plaintiff incorporates by reference all preceding paragraphs.
103. This Court has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367.
104. The manager's conduct was extreme and outrageous.
105. Explicitly telling an employee with known mental illness that the company

"won't give accommodations" for disability and that the employee "should not accept jobs" if medication is required exceeds all bounds of decency tolerated in a civilized society.

106. The manager's conduct was intended to cause severe emotional distress, or was undertaken with reckless indifference as to whether severe emotional distress would result.
107. The manager knew Plaintiff had mental illness requiring daily medication.
108. The manager knew or should have known that explicitly refusing accommodation and imposing a 30-day suspension would cause severe psychological harm to someone with Plaintiff's disabilities.
109. Plaintiff suffered severe emotional distress as a direct and proximate result of the manager's extreme and outrageous conduct.
110. Three suicide attempts within weeks of the discriminatory conduct constitute severe emotional distress by any measure.

WHEREFORE, Plaintiff requests judgment against Defendants on Count V and the relief set forth below.

## COUNT VI: NORTH CAROLINA STATE LAW CLAIM

### Vicarious Liability / Respondeat Superior

111. Plaintiff incorporates by reference all preceding paragraphs.
112. This Court has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367.
113. The Scaleybark branch manager was an employee of Defendants acting within the scope of his employment at all times relevant to this Complaint. 114. The manager was authorized to make personnel decisions, including disciplinary decisions and responses to accommodation requests.
115. The manager's tortious conduct—including negligent and intentional infliction of emotional distress—occurred while he was performing his job duties and exercising managerial authority delegated to him by Defendants.
116. Under the doctrine of respondeat superior, Defendants are vicariously liable for the manager's tortious conduct.

WHEREFORE, Plaintiff requests judgment against Defendants on Count VI and the relief set forth below.

## COUNT VII: NORTH CAROLINA STATE LAW CLAIM

### Negligent Supervision, Training, and Retention

118. This Court has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367.
119. Defendants negligently failed to: - Train the Scaleybark manager on federal disability discrimination laws, including the ADA's accommodation requirements and interactive process obligations; - Implement adequate policies and procedures for handling disability accommodation requests; - Supervise the manager's handling of disability-related employment decisions; and - Retain a manager who repeatedly violated federal law and company policy.
120. Defendants knew or should have known that the manager was not adequately trained to handle disability accommodation requests in compliance with federal law.
121. Defendants' negligent supervision, training, and retention of the manager was a proximate cause of Plaintiff's injuries.
122. The fact that Defendants terminated the manager and closed the entire Scaleybark office after learning of his conduct demonstrates that Defendants recognized the manager's unfitness and their own failures in supervision and training.
123. However, Defendants cannot escape liability for the harm their negligence caused.

WHEREFORE, Plaintiff requests judgment against Defendants on Count VII and the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. Declaratory Relief

1. A declaratory judgment that Defendants violated the Americans with Disabilities Act by failing to accommodate Plaintiff's disability and discriminating against him on the basis of disability;
2. A declaratory judgment that Defendants violated Title VII of the Civil Rights Act by discriminating against Plaintiff on the basis of race;
3. A declaratory judgment that Defendants are liable under North Carolina law for negligent infliction of emotional distress, intentional infliction of emotional distress, vicarious liability, and negligent supervision, training, and retention.

B. Damages on Federal Claims (Counts I, II, III)

4. Economic damages in the amount of $20,500, consisting of:
   o Lost wages during 30-day suspension: $2,500

- Lost wages from inability to work (July 18 - December 27, 2025): $15,000
- Rent arrears and housing instability costs: $3,000

5. Note: Economic damages (back pay and front pay) are not subject to the statutory cap under 42 U.S.C. § 1981a(b)(2).
6. Combined compensatory and punitive damages in the amount of $300,000, the statutory maximum under 42 U.S.C. § 1981a(b)(3)(D) for employers with 500 or more employees, based on:
    - Severe mental and emotional distress
    - Three suicide attempts and associated psychological trauma
    - Ongoing symptoms of depression, anxiety, and PTSD
    - Loss of enjoyment of life and anhedonia
    - Humiliation and loss of dignity
    - Pain and suffering
    - Permanent psychological injury
    - The manager's malicious and reckless refusal to accommodate Plaintiff's disability
    - Defendants' reckless indifference to federally protected rights
    - The need to punish and deter future violations

Total Damages on Federal Claims: $320,500

C. Damages on State Law Claims (Counts IV, V, VI, VII)

6. On Count IV (Negligent Infliction of Emotional Distress): $300,000, consisting of:
    - Severe mental and emotional distress caused by Defendants' negligent conduct: $150,000
    - Three suicide attempts as foreseeable result of Defendants' negligence: $100,000
    - Ongoing psychological trauma and PTSD symptoms: $50,000
7. On Count V (Intentional Infliction of Emotional Distress): $300,000, consisting of:
    - Damages for extreme and outrageous conduct: $200,000
    - Additional damages for malicious conduct: $100,000
8. On Count VI (Vicarious Liability): Defendants are vicariously liable for all damages awarded under Counts IV and V.
9. On Count VII (Negligent Supervision, Training, and Retention): $250,000, consisting of:
    - Damages for failure to train manager on ADA compliance: $100,000
    - Damages for failure to supervise manager's disability-related decisions: $75,000
    - Damages for corporate-level negligence in preventing ADA violations: $75,000

Total Damages on State Law Claims: $850,000

Note: North Carolina does not cap compensatory damages for negligent or intentional infliction of emotional distress. Plaintiff recognizes that the Court will prevent double recovery and will apportion damages appropriately among the various counts to ensure Plaintiff is fully compensated without duplication.

D. Injunctive Relief

10. A permanent injunction requiring Defendants to:
    - Implement comprehensive ADA training for all managers and supervisors;
    - Establish written policies and procedures for handling disability accommodation requests in compliance with the ADA;
    - Undergo monitoring to ensure compliance with federal disability discrimination laws; and
    - Post notices informing employees of their rights under the ADA and Title VII.

E. Attorney's Fees and Costs

11. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(k)), to be paid by Defendants in addition to and separate from the damages awarded herein;
12. Pre-judgment and post-judgment interest as allowed by law.

F. Additional Relief

13. Such other and further relief as this Court deems just and proper.

TOTAL DAMAGES REQUESTED:

- Federal Economic Damages: $20,500
- Federal Compensatory/Punitive (capped): $300,000
- State NIED: $300,000
- State IIED: $300,000
- State Negligent Supervision: $250,000
- GRAND TOTAL: $1,170,500
- Plus: Attorney's Fees (to be determined)

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 16th day of January

PRO SE:

Dominique Jackson
1113 Glenfiddich Drive
Charlotte, NC 28215
Phone: (704) 998-8936
Email: [Your email address]

PLAINTIFF ACTING PRO SE

*[signature]*